UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
In re:                                                                    Chapter 7

MICHAEL MAVASHEV,                                        Case No. 14-46442-cec
                Debtor.
-------------------------------------------------------------x
MATTHEW C. HARRISON, JR.
                                                 Adv. Pro. No. 17-01072-cec
                Plaintiff,
v.

MICHAEL MAVASHEV,

                Defendant.
-------------------------------------------------------------x

## DECISION DENYING DEBTOR'S DISCHARGE

APPEARANCES

| | |
|---|---|
| Leo Fox, Esq. | Alla Kachan |
| 630 Third Avenue, 18th Floor | 3099 Coney Island Avenue, 3rd Floor |
| New York, NY 10017 | Brooklyn, NY 11235 |
| Counsel for the Plaintiff | Counsel for Defendant |

CARLA E. CRAIG
Chief United States Bankruptcy Judge

Matthew Harrison, Jr. ("Plaintiff" or "Trustee") brought this adversary proceeding objecting to the discharge of Michael Mavashev (the "Debtor") pursuant to 11 U.S.C. § 727(a).[1] This decision follows a trial held on the issue of whether the Debtor's discharge must be denied under § 727(a)(3), because "the [D]ebtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the [D]ebtor's financial condition or business transactions might be ascertained," or under §727(a)(5), because "the [D]ebtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the [D]ebtor's liabilities." §§ 727(a)(3), (5). Because the records produced by the Debtor are insufficient to allow parties in interest to ascertain the Debtor's financial condition, and because the Debtor has not demonstrated that the failure to keep or preserve records was justified, the Debtor is denied a discharge pursuant to § 727(a)(3). The Debtor's discharge is also denied pursuant to § 727(a)(5) because the Debtor has failed to explain satisfactorily why, given that the schedules filed by the Debtor show business debt of approximately $2.4 million, consisting of claims of creditors who delivered diamonds to the Debtor for which they were not paid, the Debtor has no inventory and only $600,000 of receivables.

## JURISDICTION

This Court has jurisdiction of this core proceeding under 28 U.S.C. § 157(b)(2)(J) and § 1334(b), and the Eastern District of New York standing order of reference dated August 28, 1986, as amended by Order dated December 5, 2012. This decision constitutes the Court's findings of fact and conclusions of law to the extent required by Federal Rule of Bankruptcy Procedure 7052.

---

[1] Unless otherwise indicated, statutory references are to the Bankruptcy Code, Title 11, U.S.C.

BACKGROUND

The Debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code on December 24, 2014. In his bankruptcy, the Debtor seeks to discharge over $2.3 million in unsecured claims, all of which is identified as business debt. On May 31, 2017, the Trustee commenced this adversary proceeding seeking a judgment denying the Debtor a discharge pursuant to §§ 727(a)(2), (3), (4), (5), and (7). A trial was held on July 12, 2018, which focused on the Trustee's objection to discharge based on the Debtor's failure to keep or preserve records pursuant to § 727(a)(3) and on the Debtor's unsatisfactory explanation of the loss and deficiency of assets to meet the Debtor's liabilities under § 727(a)(5). The Trustee and the Debtor each called two witnesses during the trial. The Trustee offered the testimony of Abraham Kaufman, the principal of a corporation which has filed a $50,000 claim in the bankruptcy case, and of Russell Kranzler, the accountant retained by the Trustee to help administer the estate. The Debtor testified, and also called Jo Amar, a friend of the Debtor who briefly worked in the diamond business.

Plaintiff contends that, pursuant § 727(a)(3), the Debtor is not entitled to a discharge, because the Debtor concealed or failed to keep or preserve business records sufficient to allow parties in interest to ascertain the Debtor's financial condition. Plaintiff also asserts that the Debtor is not entitled to a discharge under § 727(a)(5) because the Debtor has failed to explain sufficiently the loss and deficiency of assets to meet his liabilities. (Joint Pre-Trial Order, 14–16, ECF No. 42.) The Debtor contends that he kept records to the best of his ability and that any inadequacy in his record keeping was attributable to inexperience. (Joint Pre-Trial Order, 13, ¶7 at (bb)–(ff), ECF No. 42.)

EVIDENCE PRESENTED AT TRIAL

Russell Kranzler, a Certified Public Accountant, also licensed as a forensic accountant certified in financial forensics, with over 40 years of experience as an accountant, testified as an expert on behalf of the Trustee. Mr. Kranzler testified that the records the Debtor provided were atypical for the type of business the Debtor was in and were "impossible to follow." (Tr. 39–42.)[2] Mr. Kranzler explained that the Debtor did not keep financial records on an accrual basis, instead preparing his tax returns on a cash basis. (Tr. 39–40.) This was improper, because businesses, such as the Debtor's, that maintain inventory were required at that time to prepare their tax returns on an accrual basis. (Tr. 40:1–14.) Mr. Kranzler further explained that maintaining records on an accrual basis is also important from a practical standpoint: "[W]hen you're looking at precious gems type of inventory he was handling . . . it's a prudent business decision to be on an accrual basis so you know exactly what people owe you, what you owe to people and how much inventory and what type of inventory you have on hand." (Tr. 40:7–14.)

Mr. Kranzler testified that a business using an accrual method of recordkeeping maintains "an accounts receivable balance supported by books and records that show what that accounts receivable balance is.…[They also have] an accounts payable balance that would support what's due and owing [to] the creditors." (Tr. 73:17–25.) In contrast to the accrual method, the cash method of recordkeeping shows money that has been received and money that has been disbursed, which provides an incomplete picture of the business because it "doesn't account for merchandise delivered or merchandise purchased [on credit]." (Tr. 74:4–7.)

[2] "Tr." refers to the transcript of July 12, 2018, trial, filed on the electronic docket of this adversary proceeding at ECF. No. 44, by page and line number.

Mr. Kranzler testified that a business such as the Debtor's should maintain a general ledger with a cash receipts journal, cash disbursements journal, accounts receivable journal, and a system of inventory control. (Tr. 40:18–41:5.) Mr. Kranzler further testified that an inventory control system would be particularly important for a diamond dealer because of the nature of the inventory he is handling: each stone is unique, identified by an individual numbered certificate, and each is a high value item. (Tr. 40:25–41:5.) Mr. Kranzler testified that he did not receive "any of these types of records from the Debtor." (Tr. 41:6–10.)

Instead, Mr. Kranzler testified, the Debtor provided him with a collection of documents in two bins containing invoices and bank statements. (Tr. 47:4–7.) The Debtor failed deliver the documents in any "kind of organized fashion." (Tr. 50:7–12.) Mr. Kranzler testified that when he inventoried the bins and attempted to sort, organize, and catalogue their contents, it became apparent that the invoices, which are normally numbered sequentially, were incomplete, contained gaps, and were not in order, which made it impossible to match them against payments. (Tr. 49:11–61:23.) As a result, Mr. Kranzler testified, he was unable to use the invoices provided by the Debtor to piece together the Debtor's books and records. (Tr. 51:13–16.)

In addition to the invoices, the Debtor also provided the Trustee with copies of his income tax returns for fiscal years 2010 through 2015, as well as bank statements (not including cancelled checks) for a that period. However, those documents provided no meaningful information about the Debtor's business. The tax returns, as noted above, were prepared on a cash basis, and therefore did not reflect the Debtor's accounts receivable or accounts payable. (Tr. 33:24–34:8.) Instead, the tax preparer recorded transactions based upon bank statements and cancelled checks (Tr. 34:18–19), which show only funds paid and received. (Tr. 35:3–11).

Moreover, the Debtor did not provide copies of the canceled checks, and the write-up of transactions on the Debtor's tax returns did not identify the payee or check number involved, but simply reported the transactions as aggregate amounts. (Tr. 34:20–35:2.) The bank statements were equally unhelpful in understanding the Debtor's financial condition or business transactions, as they reflected receipts and disbursements, not identified by source or payee, and provided no information concerning receivables or payables. (Tr. 35:3-36:8.)

Also provided to the Trustee was a composition book in which the Debtor recorded some transactions. (Tr. 42:15–18; 74:22–75:2.) When asked on cross-examination whether the book contained business records or records of transactions, Mr. Kranzler testified as follows: "I don't know. It was impossible to follow it so I can't give you a credible answer. It could not be comprehended by anybody picking up that book and looking at it. It's not a normal business record. It was something that Mr. Mavashev kept for his own information and maybe he had an understanding of how that was looked at or viewed, but it's not a normal or typical business record." (Tr. 61:17–23.)

Mr. Kranzler testified that his review of the information the Debtor did provide, coupled with the schedules and claims filed in the bankruptcy case, led him to conclude that there are "at least 1.8 million dollars of goods that are unaccounted for." (Tr. 46:12–23.) This is because the Debtor's schedules, and the claims register, reflect claims of approximately $2.4 million for diamonds sold to the Debtor for which payment was not made. (Tr. 46:12–23.) If $2.4 million of merchandise was acquired by the Debtor, this should be reflected in inventory or receivables. The Debtor's schedule of assets, however, reflect no inventory and approximately $600,000 of "[u]npaid business debts." (Pet., Sch. B, ECF No. 1.) As a result, Mr. Kranzler concluded that "there's $1.8 million dollars of goods, at least 1.8 million dollars of goods, that are unaccounted

for." (Tr. 46:21–23.) In short, Mr. Kranzler testified, "[i]t's literally impossible to reconstruct the records. . . . There should be a lot more inventory on hand than the records and the petition reflect." (Tr. 53:8–13.)

The Debtor testified about the origins and nature of his record keeping system. (Tr. 87–91.) The Debtor's late father taught him to take a book and write everything down. (Tr. 89–90.) The Debtor adopted this method because his "knowledge of computers was zero." (Tr. 89:23–90:2.) The Debtor acknowledged that while he tried to record all transactions in the book, "when you're alone in the business you cannot do everything." (Tr. 94:16–22.) The Debtor considered hiring a bookkeeper, but decided not to because "you have to pay at least $1,000 a person . . . ." (Tr. 94:16-22.) While the Debtor testified that he made his best efforts, he acknowledged that he was unable to record all transactions in his book. (Tr. 94:12–22.) The Debtor admitted that of those entries he did make, many did not include a date. (Tr. 223:18–20.) The crux of the Debtor's argument is that any deficiencies in his record keeping were because he was new to the country, had little computer skills, lacked business acumen, and worked too hard. (See, e.g., Tr. 309: 11–24.)

DISCUSSION

A. Denial of Discharge Under 11 U.S.C § 727(a)(3)

11 U.S.C. § 727(a)(3) provides that:

> "(a) The court shall grant the debtor a discharge, unless—. . .
>
>     (3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case."

"The fundamental policy underlying § 727(a)(3) is to insure that the trustee and the creditors receive sufficient information to enable them to trace the debtor's financial history, to ascertain the debtor's financial condition, and to reconstruct the debtor's business transactions." Helms v Gangemi (In re Gangemi), 291 B.R. 242, 246 (E.D.N.Y. 2003) (quoting McCord v. Sethi (In re Sethi), 250 B.R. 831, 838 (Bankr. E.D.N.Y. 2000)). "If a debtor fails to produce records, sufficient to meet the burden placed upon him by § 727(a)(3), the Court must deny the discharge." Id.

To determine whether a debtor's discharge must be denied pursuant to § 727(a)(3), a court must apply a two-step analysis. D.A.N. Joint Venture v. Cacioli (In re Cacioli), 463 F.3d 229, 235 (2d Cir. 2006). First, the party objecting to discharge has the burden to show that the debtor "has failed to keep and maintain adequate books and records, and that such failure renders it impossible to discern the debtor's true financial condition and identify material business transactions." Sethi, 250 B.R. at 838. When the plaintiff meets this requirement, the debtor then carries the burden to show that the failure to produce such records is justified. See Cacioli, 463 F.3d at 235.

### B. Adequacy of the Records Produced

"It is up to the bankruptcy court's broad discretion to determine on a case by case basis whether the records produced by the debtor are sufficient." Sethi, 250 B.R. at 838 (citing Krohn v. Fromman (In re Frommann), 153 B.R. 113, 117 (Bankr. E.D.N.Y. 1993)). "[T]he debtor is not required to keep an impeccable system of bookkeeping, or to maintain records so complete that he can satisfy an expert in business." Id. Individuals conducting business have the freedom to decide whether and how to maintain business records. That decision, however, may affect the individual's ability to obtain a discharge. Bay Area Diamond Wholesalers, Inc. v. Polinski (In re

7

Polinski), Bankr. No. 07-10102, Adv. No. 07-1032, 2008 WL 160930, at *1 (Bankr. N.D. Cal. Jan. 15, 2008), aff'd, No. NC–07–1295–JuMkK, 2008 WL 8444830 (B.A.P. 9th Cir. Feb. 19, 2008) ("What few records do exist are often just scribbled on small pieces of paper. While these practices may work well for jewelers and their suppliers when all is going smoothly, they present grave problems for jewelers seeking a discharge in bankruptcy.").

For a debtor to avoid a denial of discharge pursuant to § 727(a)(3), that debtor must demonstrate there is written evidence from which that debtor's present financial condition and reasonably recent business transactions may be ascertained with substantial completeness and accuracy. Jaroslawicz v. Steinberg (In re Steinberg), No. 17 Civ. 4724 (LGS), 2018 WL 1229838, at *6 (S.D.N.Y. Mar. 8, 2018). The debtor cannot satisfy this obligation by "simply plac[ing] sacks of records before the bankruptcy judge or trustee and request[ing] the judge or trustee to sift through the documents and attempt to reconstruct the flow of the debtor's assets." Frommann, 153 B.R. at 118; Ng v. Adler, 518 B.R. 228, 241 (E.D.N.Y. 2014) (holding that a debtor cannot obtain a discharge where the debtor simply turns over boxes of records and asks an accountant to find documentation which supports their position); Schackner v. Breslin Realty Dev. Corp., No. 11-CV-2734(JS), 2012 WL 32624, at *5 (E.D.N.Y. Jan. 5, 2012) (rejecting the debtor's argument that the turnover of 900 pages of records is adequate, because the records provided appeared disorganized and included ninety pages of duplicative pages); Miller v. Pulos (In re Pulos), 168 B.R. 682, 691 (Bankr. D. Minn. 1994) (holding that quality, not quantity, is relevant to the inquiry and that a mountain of paper in two boxes is a "red herring."); Hughes v. Lieberman (In re Hughes), 873 F.2d 262, 264 (11th Cir. 1989) ("Hughes simply brought into court a jumbled mass of reports, miscellaneous papers, invoices and other raw data urging that when properly studied and organized these would adequately reflect the status of affairs of the

bankrupt and his handling of [its] assets and transfers of his personal assets to [the bankrupt]. Obviously the bankruptcy judge did not have to accept this sloppy compliance with the § 727(a)(3) bookkeeping standards and the § 727(a)(5) obligation to provide satisfactory explanation for a loss or deficiency of assets.").

The documents produced by the Debtor concerning his business are clearly insufficient to allow parties in interest to ascertain the Debtor's business transactions. Courts consistently hold that in order to adequately ascertain a debtor's financial condition, the debtor must provide documents from which individual business transactions can be identified and substantiated. E.g., Rossi v. Moreo (In re Moreo), No. 07-71258-478, 2009 WL 2929949, at *6 (Bankr. E.D.N.Y. Sept. 10, 2009), aff'd, 437 B.R. 40 (E.D.N.Y. 2010) (monthly handwritten journals containing the total cash receipts and disbursements for the debtor's retail bagel store were insufficient to satisfy § 727(a)(3) because the journals did not contain separate entries for daily or weekly receipts and disbursements, the debtor did not provide receipts or other information to support the entries, and the entries could not be reconciled with the business's bank statements); Solis v. Asif (In re Asif), 455 B.R. 768, 793 (Bankr. D. Kan. 2011) (denying discharge under § 727(a)(3) where debtor failed to keep any general accounting ledgers, invoices, cancelled checks, inventories).

Here, the record demonstrates that the Debtor failed to keep or preserve information, sufficient to permit parties in interest to ascertain the Debtor's financial condition or the Debtor's business transactions. The Debtor kept an incomplete and disorganized collection of invoices, and recorded transactions in haphazard fashion in his book. (Pl.'s Ex. 7 (Record Book).) Some entries include a date, price, and item sold or bought, but many entries lack such information. (Tr. 223:10–24; 225:2–14.) The invoices produced are incomplete and insufficient. (Tr. 64:14–

9

24.) The bank statements, which lacked cancelled checks, and tax returns, provide no information about payables and receivables. (Tr. 34:15–37:23.) Taken together, the records produced are grossly insufficient to permit the Trustee or creditors to identify or substantiate the Debtor's business transactions.

In assessing the adequacy of financial records, courts may consider: (1) whether the Debtor was engaged in business, and if so, the complexity and volume of the business; (2) the amount of the Debtor's obligations; (3) whether the Debtor's failure to keep or preserve books and records was due to the Debtor's fault; (4) the Debtor's education, business experience, and sophistication; (4) the customary business practices for record keeping in the Debtor's type of business; (6) the degree of accuracy disclosed by the Debtor's existing books and records; (7) the extent of any egregious conduct on the Debtor's part; and (8) the Debtor's courtroom demeanor. Frommann, 153 B.R. at 117.

Consideration of the eight Frommann factors supports the conclusion that the Debtor failed to keep or maintain adequate records as required by § 727(a)(3). The Debtor owned and operated a diamond wholesale business, and engaged in numerous transactions dealing with highly valuable goods. The Debtor's petition lists about $2.4 million in unsecured claims, all of which represent claims of creditors who delivered diamonds to the Debtor, but did not receive payment. Although the Debtor testified that he maintained records to the best of his ability, his failure was not due to circumstances beyond his control. C.f. Pereira v. Young (In re Young), 346 B.R. 597, 617 (Bankr. E.D.N.Y. 2006) (finding that the debtor was not at fault for her inability to produce adequate documents, where documents were stolen). The Debtor claims to be an unsophisticated individual, but he had significant experience in the diamond industry, and engaged in numerous transactions involving high-value merchandise. (Tr. 107:10–109:10; Tr.

213:18–21.) As to the customary record keeping practices in the Debtor's industry, Mr. Kranzler's testimony made it clear that a business such as the Debtor's, which deals with inventory, was required to maintain business records on an accrual basis. (Tr. 58:21–24.) The Debtor did not maintain a general ledger, a cash receipts journal, a cash disbursements journal, an accounts receivable journal, an accounts payable journal, or a method to track inventory, all of which should have been kept under the circumstances. (Tr. 40:7–42:20.) The degree of the accuracy of the records provided is difficult to ascertain, because the records are incomplete. As to the extent of any egregious conduct on the Debtor's part, even absent a finding that the Debtor engaged in misconduct, it is clear that the Debtor failed to provide adequate information to allow parties in interest to ascertain the financial condition and specific transactions of the Debtor and his business.

C. The Debtor's Justification

Whether a debtor's failure to keep books and records is justified is "a question in each instance of reasonableness in the particular circumstances." Cacioli, 463 F.3d at 235 (quoting In re Underhill, 82 F.2d 258 (2d Cir. 1936)). The debtor's "honest belief that he does not need to keep the records in question, or that his records are sufficient, or his statement that it is not his practice to keep additional records, does not constitute justification for failure to keep or preserve records under § 727(a)(3)." Sethi, 250 B.R. at 839 (citing Aid Auto Stores v. Pimpinella (In re Pimpinella), 133 B.R. 694, 698 (Bankr. E.D.N.Y. 1991)). The debtor must do more than show "[he] did not comprehend the need for them and must carry [his] explanation by way of justification to the point where it reasonably appears that because of unusual circumstances [he] was under no duty to keep them." Frommann, 153 B.R. 113, 117 (quoting In re Sandow, 151 F.2d 807, 809 (2d Cir. 1945)).

11

The Debtor here has offered two justifications for his record keeping practices. First, the Debtor stated that he relied on his father for advice and help. (Tr. 212:5–22 ("I didn't know how to handle the business the way [Mr. Kranzler] was saying.").) The second justification the Debtor offered was that he tried his best but the demands of his business limited his capacity to maintain complete and accurate records. (Tr. 222:21–24 ("I was – I had to sell. I had to write. I had to run for checks. I had to do a lot of things.").)

The Debtor's explanations fail, under § 727(a)(3), to justify the Debtor's failure to maintain adequate records. The Debtor's statement that, based upon his father's advice, he believed that his method of record keeping was adequate, has been found insufficient to justify inadequate record keeping. See Frommann, 153 B.R. 113, 117 (holding that the debtor's belief that the debtor need not maintain the types of records ordinarily maintained is not a sufficient justification for failing to maintain such records.); Desiderio v. Devani (In re Devani), 535 B.R. 26, 34 (Bankr. E.D.N.Y. 2015) (holding that a debtor's assertion that he is not a sophisticated businessman is not an excuse for failing to produce records).

The Debtor's explanation, that, in operating his business by himself, the Debtor was too busy to effectively create and maintain complete and detailed business records, has also been found insufficient. Hunt v. Steffensen (In re Steffensen), 567 B.R. 188, 201 (D. Utah 2016) ("Being too busy, however, is insufficient to justify a debtor's failure to fulfill his duty to create books and records accurately documenting his business affairs." (citation omitted)); Womble v. Pher Partners (In re Womble), 108 F. App'x 993, 996 (5th Cir. 2004) ("The demands of operating a business do not excuse a debtor from keeping basic financial records." (citation omitted)); WTHW Investment Builders v. Dias (In re Dias), 95 B.R. 419, 422 (Bankr. N.D. Tex.

1988) (finding that the debtor's testimony that he did not have time to maintain adequate records because day to day affairs required his full attention to be an insufficient justification).

For these reasons, the Debtor has not carried his burden to justify his failure to provide adequate records.

### D.  Denial of Discharge under 727(a)(5)

11 U.S.C. § 727 provides that:

> "(a) The court shall grant the debtor a discharge, unless—. . .
>
> (5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities."

A number of courts have held that where the plaintiff has established that the debtor has taken possession of gems and has neither the gems nor the proceeds of their sale, a *prima facie* case for denial of discharge has been made out. Polinski, 2008 WL 160930, at *1 ("Once a jewelry wholesaler has established a jeweler took possession of its gems and presently has neither the gems nor the proceeds of their sale, a prima facie case for the denial of the jeweler's discharge has been made out. The burden then shifts to the debtor to show both business like conduct and good faith in relation to the gems."); Nof v. Gannon (In re Gannon), 173 B.R. 313, 317 (Bankr. S.D.N.Y. 1994) ("[Plaintiff] has stated a *prima facie* case under § 727(a)(5) because he has established that [the debtor] took possession of the diamonds and presently has neither the diamonds nor the proceeds thereof.")

Here, the Plaintiff has made a *prima facie* case for the denial of the Debtor's discharge pursuant to § 727(a)(5). The testimony of the Trustee's accountant established that the Debtor has "at least 1.8 million dollars of goods that are unaccounted for." (Tr. 46:12–23.) The Debtor has not met his burden to show "business like conduct and good faith in relation to the gems."

Polinski, 2008 WL 160930, at *1.  Nor has the Debtor provided any satisfactory explanation for the absence of inventory or receivables corresponding to creditor claims.  Although he testified that sometimes a business must sell a diamond for less than its cost because of market changes, the Debtor failed to point to any transaction or series of transactions that would account for this magnitude of loss.  (Tr. 99:1–13.)

For these reasons, the Debtor's discharge must be denied under § 727(a)(5).

## CONCLUSION

For the reasons set forth above, the Debtor is denied a discharge.  Because the Debtor's discharge must be denied under §§ 727(a)(3) and (5), it is not necessary to decide whether discharge should be denied based on other grounds.  A separate order and judgment will be issued.



Dated: Brooklyn, New York
September 28, 2018

_____
Carla E. Craig
United States Bankruptcy Judge